

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

FILED
Oct 03, 2018
02:49 PM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

| | | |
|---|---|---|
| David Christmas | ) | Docket No.   2016-02-0110 |
| | ) | |
| v. | ) | State File No. 20719-2015 |
| | ) | |
| Morristown Logistics, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Brian K. Addington, Judge | ) | |

### Affirmed and Remanded - Filed October 3, 2018

After sustaining a compensable low back injury, the employee in this interlocutory appeal entered into a court-approved settlement agreement with the employer that provided future medical benefits for his work-related injury. The employee thereafter relocated from Tennessee to Colorado and began treating with a pain management specialist authorized by the employer. On the employee's fourth visit, and after submitting to two urine drug screens that revealed the presence of alcohol, the specialist discharged the employee from his care. Based on the employee's alleged violation of the pain management agreement and his alleged noncompliance with the treatment plan, the employer terminated ongoing pain management, resulting in the employee's request for additional medical care. Following an on-the-record review, the trial court ordered the employer to provide a panel of pain management specialists from which the employee could choose a new provider. The employer has appealed. We affirm the trial court's decision and remand the case.

Judge David F. Hensley delivered the opinion of the Appeals Board in which Presiding Judge Marshall L. Davidson, III, and Judge Timothy W. Conner joined.

Michael W. Jones and Jeffrey M. Cranford, Nashville, Tennessee, for the employer-appellant, Morristown Logistics

David Christmas, Colorado Springs, Colorado, employee-appellee, pro se

**Factual and Procedural Background**

David Christmas ("Employee") sustained a compensable back injury in the course and scope of his employment with Morristown Logistics ("Employer") while residing in Tennessee in March 2015. Employer accepted the claim and provided benefits. Employee failed to respond adequately to conservative treatment and underwent a lumbar discectomy, but his condition failed to improve following the surgery. Upon Employee's reaching maximum medical improvement and his surgeon's assessment of a 19% impairment rating, the parties reached an agreement to settle Employee's claim. In addition to providing permanent partial disability benefits, the parties' March 2016 court-approved settlement provided that Employer would be responsible for paying for "reasonable and necessary authorized future medical expenses [that] are directly related to the [March 2015] injury."[1]

Following the settlement of Employee's claim, Employee relocated from Tennessee to Colorado. Due to his continuing complaints, Employee underwent surgical implantation of a spinal cord stimulator in January 2017. Unfortunately, his complaints continued, and he requested additional medical care for his work-related injury. Employer authorized Employee to treat with Dr. Miguel Castrejon, a pain management specialist located in Colorado Springs, Colorado. Employee began treating with Dr. Castrejon on September 18, 2017. The report of the initial visit stated that Employee's medications included Lyrica and over-the-counter Motrin, and that Employee had been "taking Norco," but had "run out of medication."[2] The report also stated that Dr. Castrejon discussed with Employee the "chronic use of narcotic medications" and advised Employee that "since he ha[d] already discontinued the use of Norco, it would be in his best interest to attempt to minimize the use of narcotic medication." Dr. Castrejon recommended Employee continue Lyrica, and he prescribed "LidoPro patches and gel," which he stated "should allow for additional benefit without the use of oral narcotic/analgesic medication." Dr. Castrejon noted that "[a] urine drug screen [would] be obtained in the event that [Employee] requires the use of narcotic medication."

At Employee's second visit on October 18, 2017, Dr. Castrejon noted that Employee was "reporting difficulty without use of pain medication." The report stated

---

[1] The trial court's Expedited Hearing Order was issued following an on-the-record determination rather than an in-person evidentiary hearing. Thus, there was no hearing from which a transcript or statement of the evidence could be prepared and filed. We have gleaned the facts from the trial court's order and the documents identified by the trial court as having been reviewed and considered in the court's on-the-record determination.

[2] Lyrica is a brand name of a prescription medicine used to treat pain resulting from spinal cord nerve injury. *See* WebMD, https://www.webmd.com/drugs/2/drug-93965/lyrica-oral/details (last visited Sept. 28, 2018). Norco is the brand name of a drug that combines hydrocodone and acetaminophen and is prescribed for treatment of pain symptoms. *See* WebMD, https://www.webmd.com/drugs/2/drug-63/norco-oral/details (last visited Sept. 28, 2018).

that Employee was "having difficulty or inability to carry out his activities of daily living." Dr. Castrejon prescribed Vicoprofen, a narcotic drug containing hydrocodone and ibuprofen. He stated in his report that he "emphasized to [Employee] the need to follow-up with all medical appointments and the care that has been agreed upon," adding that "in the absence of such [Employee] will be discharged." Further, he stated that Employee "verbalized an understanding of [his] treatment plan and agreed to continue under [Dr. Castrejon's] care." The report noted that a urine drug screen was obtained at the October 18, 2017 visit. An October 28, 2017 assessment of the urine drug testing results signed by Dr. Castrejon stated there was "a compliant response to the current medication, of Lyrica, but there has been an unexpected finding of alcohol and THC."

Employee returned to Dr. Castrejon on November 14, 2017 and was administered a second urine drug screen.[3] Dr. Castrejon's November 28, 2017 assessment of the urine drug testing results stated Employee was compliant with his "current medication[s] of Lyrica and Vicoprofen," but a "finding of THC and alcohol [was] unexpected and [was] previously detected." The assessment noted that Employee provided Dr. Castrejon with a "marijuana card" and stated the "finding of alcohol remains of concern to this examiner and this was expressed to [Employee] at his initial [urine drug screen]." Finally, the November 28, 2017 assessment stated that the doctor "will consider release" at Employee's follow-up visit.

Employee's fourth and final visit with Dr. Castrejon occurred on December 11, 2017. In the treatment plan included in the report of that visit, Dr. Castrejon stated that he had "discussed the two abnormal [urine drug screens] and advised [Employee] that [he] would be unable to continue seeing [Employee] based upon persistent elevated levels of alcohol." Noting Employee's "lack of benefit with Vicoprofen," Dr. Castrejon prescribed Employee a 30-day supply of Norco and released Employee from his care based upon "two inconsistent urine drug screens." Dr. Castrejon provided a discharge letter to Employee the same day that included contact information for three pain management specialists "where [Employee] may continue care." He also provided Employee a prescription for a new lumbar brace at that visit.

In the December 11, 2017 discharge letter, Dr. Castrejon stated that, at the time of his initial evaluation, Employee signed a pain contract "pertaining to use of other prescription medications or substances, and abnormal findings on urine drug screens." The letter stated that, "[d]ue to [Employee's] violation of [his] pain contract," the doctor was releasing Employee from his care. Employee subsequently requested Employer to provide continued medical treatment, but Employer refused to arrange further treatment based upon Employee's alleged violation of the pain management contract. However, on

---

[3] The records reviewed and considered by the trial court do not include the report of the November 14, 2017 visit, but do include other records indicating Employee was seen by Dr. Castrejon on that date. Also, a November 28, 2017 assessment of urine testing results indicates November 14, 2017 as the date of urine drug testing.

January 20, 2018, Dr. Castrejon signed a letter stating he "would like to make a correction to [his] discharge letter." The January 20 letter noted that "the December 11, 2017 letter [] stated that [Employee] had violated a signed pain contract, when in fact, [Employee] had never signed a pain contract." The letter explained that at Employee's initial evaluation he "was not taking any, nor was he placed on any narcotic medication." Further, it stated that Employee was not placed on prescription medication "until his next to last appointment and the intent was on a transient basis." Finally, the letter stated that the doctor's "decision to release [Employee] from [his] practice was based upon two inconsistent urine drug screens."

Employee subsequently filed a petition seeking continued medical care and requested an expedited hearing that included a request for the trial court to issue a decision on the record instead of convening an evidentiary hearing. Following mediation that did not resolve the parties' disputes, the trial court issued a docketing notice for an on-the-record determination that identified documents to be reviewed and considered by the court in its determination. Employee's "Affidavit" was included in those documents, to which Employee had attached a written narrative stating, among other information, that he "was not aware [he] could not drink alcohol," that he had "been under the same pain plan for [three] years and [he] had not once . . . ever been told [he] could not consume alcohol," adding that he "had no idea [he] could not have a drink with [his] dinner." The documents also included correspondence from Employer's attorney to the mediator forwarding Dr. Castrejon's January 20, 2018 "correction" letter, in which Employer stated: "Our position remains [Employee] violated his agreement with the authorized treating physician and was non-complaint with his treatment and discharged," adding that "[b]oth circumstances are covered in our comp law" and Employer "has suspended the provision of medical care."

The trial court concluded that Employee's actions "violated Dr. Castrejon's verbal instructions regarding compliance," adding that the court "finds [Employee's] actions were unintentional." The trial court determined that, "[b]ased on the evidence presented . . . [Employee] did not violate a signed, written pain management agreement," and the court concluded Employee is likely to succeed at trial in establishing his right to continued pain management. The trial court ordered Employer to provide Employee a panel of pain management specialists for further care. Employer has appealed.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2017). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar

4

deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2017).

## Analysis

In its order requiring Employer to provide additional medical care, the trial court noted Employer's assertions that Employee had violated both "an unwritten agreement and a statutory provision to comply with Dr. Castrejon's treatment plan." In its brief, Employer asserts a single issue, contending Employee's "repeated violations" of the treating physician's instructions concerning the use of alcohol, which resulted in the physician's discharge of Employee from his care, are "*prima* [*facie*] non-compliance with medical treatment" evidencing Employee's "failure to comply with the authorized treating physician's treatment plan." Citing Tennessee Code Annotated section 50-6-204(d)(8) (2017), Employer asserts Employee's failure to comply with the treatment plan "provides the avenue to suspend Employee's medical treatment." Based on the circumstances presented, we disagree.

Section 50-6-204(d)(8) provides two different situations in which an employee's right to compensation can be suspended, both of which involve an employee's refusal to take some type of action. Specifically, the employee's right to compensation "shall" be suspended if the injured employee refuses to (1) "comply with any reasonable request for examination," or (2) "accept the medical or specialized medical services that the employer is required to furnish." Tenn. Code Ann. § 50-6-204(d)(8). Citing *Chapman v. Employers Insurance Company*, 627 S.W.2d 122 (Tenn. 1981) and *Holder v. Liberty Mutual Insurance Company*, 587 S.W.2d 372 (Tenn. 1979), Employer asserts the documents considered by the trial court show Dr. Castrejon counseled Employee concerning his need for compliance with the treatment plan, and that Employee's "repeated violations of the instructions, whether written or not, demonstrate [Employee's] lack of compliance with the recommended treatment." However, neither of the cited cases supports the proposition that compensation can be suspended for an employee's failure to follow a treating physician's instructions.

In *Chapman*, the trial court concluded that the employee's benefits should not be suspended as a result of his refusal to undergo open heart surgery. Stating that an injured employee "is not under a duty to submit to an operation . . . when such operation is

attendant with serious risk of life," the Tennessee Supreme Court agreed with the trial court's conclusion that the employee did not have to undergo surgery in order to continue receiving benefits. *Chapman*, 627 S.W.2d at 124. Similarly, in *Holder* the employee failed to keep an appointment that was scheduled for an evaluation of his injuries and a psychological evaluation in preparation for surgery to remove a herniated disc. Stating the proposed procedure "is serious surgery and there is no guarantee the surgery will improve [the employee's] physical condition," the Tennessee Supreme Court noted that the employee had "decided against surgery, which is his prerogative," adding that the employee "cannot be subject to loss of benefits for failing to keep an appointment for a psychological evaluation preparatory to surgery." *Holder*, 587 S.W.2d at 374. Employer has cited no authority to support the assertion that a suspension of benefits may be based upon an injured employee's failure to follow a treating physician's instructions, and we are not aware of any Tennessee decision that supports Employer's position. We need not, however, resolve that issue here.

In the instant case, Employee did not refuse to comply with a request for examination and did not refuse to accept the medical services Employer was required to provide. According to the report of Employee's initial evaluation with Dr. Castrejon, Employee had relocated to Colorado and authorization had been provided "for a transfer of care on a pain-management basis" to Dr. Castrejon. As stated in Dr. Castrejon's December 11, 2017 letter, Employee was discharged from Dr. Castrejon's care "[d]ue to violation of [Employee's] pain contract," which Dr. Castrejon indicated Employee had signed at the time of his initial evaluation. The letter stated Employee signed "a pain contract pertaining to use of other prescription medications or substances, and abnormal findings on urine drug screens." Based on two drug screens that resulted in "findings of alcohol in high amounts," Dr. Castrejon discharged Employee from his care. However, Dr. Castrejon erred in stating Employee had signed a pain contract, which he acknowledged in his January 20, 2018 letter, stating Employee "never signed a pain contract." Nonetheless, Dr. Castrejon had already discharged Employee from his care and had provided Employee contact information for area physicians whose practices included pain management.

Tennessee Code Annotated section 50-6-204(j)(4)(A) provides that, "[a]s a condition of receiving pain management that requires prescribing Schedule II, III, or IV controlled substances," an injured or disabled employee "may sign a formal written agreement with the physician . . . acknowledging the conditions under which the injured or disabled employee may continue to be prescribed . . . controlled substances and agreeing to comply with such conditions." Subsection 50-6-204(j)(4)(B)(i) provides that an employee's right to pain management through the prescription of these controlled substances can be terminated if the employee "violates any of the conditions of the agreement on more than one (1) occasion."

6

In the present case, there was no "formal written agreement" signed by Employee. Consequently, section 50-6-204(j)(4)(B) does not provide a means to terminate Employee's right to pain management based upon alcohol being detected in two urine drug screens. Thus, we agree with the trial court's determination that Employee did not violate a pain management contract that would allow Employer to terminate pain management as stated in section 50-6-204(j)(4). Further, we conclude that, even assuming the use of alcohol contemporaneously with prescribed medications did not comply with Dr. Castrejon's verbal instructions, neither Dr. Castrejon's assessments of the drug screens nor any other document considered by the trial court indicate a refusal by Employee to accept the medical services Employer was required to furnish as contemplated in section 50-6-204(d)(8).

## Conclusion

We hold that the preponderance of the evidence supports the trial court's determination that Employee is likely to succeed at trial is establishing his right to continued pain management. Accordingly, the trial court's decision is affirmed and the case is remanded.



| | | |
|---|---|---|
| David Christmas | ) | Docket No. 2016-02-0110 |
| | ) | |
| v. | ) | State File No. 20719-2015 |
| | ) | |
| Morristown Logistics, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Brian K. Addington, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 3rd day of October, 2018.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Sent to: |
|---|---|---|---|---|---|---|
| David Christmas | | | | | X | dillonmas@gmail.com |
| Michael Jones | | | | | X | michael.jones@wimberlylawson.con |
| Brian K. Addington, Judge | | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | Penny.Patterson-Shrum@tn.gov |

Jeanette Baird
Deputy Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-0064
Electronic Mail: WCAppeals.Clerk@tn.gov